IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRENDA WILLIAMS,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:10-CV-1155 |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **FRANKLIN COUNTY MUNICIPAL COURT,** *et al.*, | : | Magistrate Judge McCann King |
| | : | |
| Defendants. | : | |

**ORDER**

**I. INTRODUCTION**

This civil rights action is now before the Court on the Motion to Dismiss of Defendants Franklin County Municipal Court and the City of Columbus (Doc. 10). For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

**II. BACKGROUND**

Plaintiff Brenda Williams filed a complaint in this Court on December 21, 2010 (Doc. 2), and an amended complaint on March 7, 2011 (Doc. 7). In her amended complaint, Williams alleges the following facts.

Williams is a woman of Latin heritage who worked as a Spanish interpreter in the Franklin County Municipal Court (the "Municipal Court") beginning in 2001. During 2006, Judge Harland Hale began making inappropriate racial and sexual comments towards Williams. For example, Williams alleges that Judge Hale referred to Williams as a "wetback" in public, asked her for dates, demanded that she accompany him on trips, and stared at her in a sexually suggestive way.

1

According to Williams, Judge Hale verbally harassed other women and minorities in the Municipal Court, including employees, attorneys, witnesses and parties. At least some of these women made formal complaints to the Human Resources department at the Municipal Court. Williams learned through conversations with members of the City Attorney's office that Judge Hale's misconduct was widely acknowledged and was so egregious that the prosecutor's office avoided assigning female prosecutors to Judge Hale's courtroom for long periods of time before, in 2009, the office stopped assigning female prosecutors to his courtroom at all.

In the summer of 2006, Williams was working on a computer in Judge Hale's office when he grabbed her breasts. Williams did not make a formal complaint at that time out of fear, and learned shortly thereafter that Judge Hale had been informing other members of the Municipal Court that Williams was mentally unbalanced.

Around this time, Williams noticed that other members of the Municipal Court staff and attorneys known to be close to Judge Hale were treating her differently. Williams states that this hostile work environment forced her to seek treatment from a physician and clinical psychologist and ultimately resulted in her becoming disabled with post-traumatic stress disorder ("PTSD").

Williams left work for some period of time due to her PTSD but had to resume for financial reasons. Williams received a letter upon her return stating that the Municipal Court had initiated an investigation of her allegations and would therefore separate her from Judge Hale for the duration of the investigation.[1] Williams was not, however, only prohibited from working in Judge Hale's courtroom, but was prohibited from working in the courtrooms of all of the judges but for the magistrates.

---

[1] Williams alleges that no such investigation ever took place.

Williams contends that the hostile environment she experienced from those who had subscribed to Judge Hale's defamation campaign increased over time and persisted for a number of years.

In 2010, Williams had her attorney deliver a letter to the City of Columbus (the "City") reaffirming her allegations of harassment. Following that letter, Williams was again assigned to work in Judge Hale's courtroom. When Williams tried to work with other interpreters to avoid or minimize contact with Judge Hale, other court staff harassed her for the extra work that those arrangements caused.

By the summer of 2010, Williams's health care providers told her that she had to stop working. Williams complied and attempted to apply for short-term disability. According to Williams, the City, the Municipal Court and their agents deliberately obstructed her efforts to obtain short-term disability payments.

Tamra Meister, the Human Resources Manager at the Municipal Court, independently contacted Williams about her experiences with Judge Hale around 2006. Meister investigated Williams's allegations and concluded that her allegations were true. Meister's declaration is attached to Williams's complaint. Meister reported her findings to Court Administrator Keith Bartlett. Meister and Bartlett then met with Judges Green, Glaeden, and Brandt. The result of this meeting was not investigation or reprimand of Judge Hale. Instead, these judges, in consultation with the City Attorney, instituted a policy whereby any woman who reported an instance of sexual harassment from Judge Hale would be transferred from his courtroom or chambers. Judge Green, moreover, would share chambers with Judge Hale to keep his behavior in check.

Williams also alleges that the Municipal Court and the City attempted to cover up Judge Hale's repeated sexual and racial harassment. In December 2006, a reporter from the Columbus

Dispatch sought personnel files from the Municipal Court of three women at the Municipal Court who had complained about Judge Hale. Williams alleges that the Municipal Court, in collusion with the City Attorney, concealed documents from the reporter. Around that time, the City participated in the cover-up, hiding information about Judge Hale's conduct from the public and the Ohio Supreme Court Office of Disciplinary Counsel and cooperating with the Municipal Court to keep Judge Hale on the bench.

Williams filed a charge against the Municipal Court and the City before the Equal Employment Opportunity Commission ("EEOC") in June 2010. Williams contends that the Municipal Court and the City made false representations to the EEOC as part of the continuing cover-up scheme.

Williams was fired on November 22, 2010. The stated reason for the termination was that Williams's physician had not supplied the requisite paperwork to document her continuing disability. Williams claims that this reason is pretextual.

Williams's amended complaint contains four claims against the Municipal Court and the City: (1) hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; (2) retaliatory discharge in violation of Title VII; (3) violation of the Plaintiff's rights under the First, Fifth, and Fourteenth Amendments under 42 U.S.C. § 1983; and (4) violations of the Consolidated Budget Reconcililation Act of 1986 ("COBRA"), § 10002, Pub. L. No. 99-272, 100 Stat. 227-32 (codified as amended at 29 §§ 1161-1168). She is seeking damages as well an order instituting reforms designed to eradicate gender-based harassment from the Municipal Court.

The Defendants filed a Motion to Dismiss on March 21, 2011, which is now ripe for review.

### III. STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Although a plaintiff need not plead specific facts, the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), 'a…complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Klusty v. Taco Bell Corp.*, 909 F.Supp. 516, 520 (S.D. Ohio, 1995) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988)). Additionally, the Court must accept as true all factual allegations contained in the complaint, and the complaint must be construed in the light most favorable to the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Utilities Co., Ltd*., 513 F.2d 1176, 1182 (6th Cir. 1975).

### IV. LAW AND ANALYSIS

The Defendants assert that the Municipal Court must be dismissed as it is not *sui juris* and that the City must be dismissed because it is not Williams's employer. The Court will address each of these assertions in turn.

#### A. The Municipal Court

Under Federal Rule of Civil Procedure 17(b)(3), the capacity to sue or be sued in federal court is determined by the law of the state in which that court is located. The Supreme Court of Ohio has held that, absent statutory authority, Ohio courts are not *sui juris*. *Malone v. Court of Common Pleas of Cuyahoga County*, 45 Ohio St. 2d 245, 248 (Ohio 1976). *Accord Leisure v. Franklin County Court of Common Pleas*, No. 2:07-cv-817, 2008 U.S. Dist. LEXIS 86404 (S.D. Ohio Sept. 8, 2008) (Marbley, J.) (relying on Ohio law). Williams has not pointed to any statute authorizing suit against the Municipal Court, and the Defendants' motion to dismiss the Municipal Court must accordingly be **GRANTED** as to all claims.

### B. The City

#### *1. Title VII*

The Plaintiff may only bring her Title VII claim against the City if she can establish that the City was her employer. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 611 (6th Cir. 2003). Whether the City is the Plaintiff's employer is a question of federal law, *Armbruster v. Quinn*, 711 F.2d 1332, 1339 (6th Cir. 1983), *overruled in non-relevant part by Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), but the Court looks to state law for evidence probative of the employer-employee relationship, *Curl v. Reavis*, 740 F.2d 1323, 1317 (4th Cir. 1984). The City will only qualify as the Plaintiff's employer if it can be said that the City "exercises control over the manner and means of the plaintiff's work." *Sutherland*, 344 F.3d at 612. To determine whether this is so, the Court considers the totality of the circumstances. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992). The Court must be mindful that with Title VII, "Congress intended to cover the full range of workers who may be subject to the harms the statute was designed to prevent, unless such workers are excluded by a specific statutory exception." *Armbruster*, 711 F.2d at 1339. In order "[t]o effectuate its purpose of

6

eradicating the evils of employment discrimination, Title VII should be given a liberal construction." *Id.* at 1336.

The Third Circuit has decided a case similar to the one *sub judice*. In *Graves v. Lowery*, 117 F.3d 723, 723 (3d Cir. 1997), seven individuals who formerly worked as clerks in a state court in Dauphin County, Pennsylvania brought a suit under Title VII against Dauphin County and others. The clerks, "formally considered employees of the judicial branch of the Commonwealth of Pennsylvania," worked under a judge who they alleged had sexually harassed them. *Id.* at 724–25. The district court concluded that Dauphin County was not the clerks' employer under Title VII and dismissed the clerk's complaint against Dauphin County under Rule 12(b)(6). *Id.* at 723–24. The Third Circuit reversed, holding that the clerks had alleged sufficient facts to demonstrate that Dauphin County "was their *de facto* co-employer." *Id.* at 729.

In Pennsylvania at that time, the county government paid the salaries of all court employees, *id.* at 724, but the connection between the court's employees and Dauphin County extended beyond mere finances. The sexual harassment policy under which the clerks first complained of the judge's conduct was set by Dauphin County, and Dauphin County convened a formal investigation into the clerks' allegations. *Id.* at 725. When the judge tried to fire some of the clerks, Dauphin County "refused to effectuate the terminations" and refused to approve funding for the people the judge tried to hire as replacements. *Id.*

The fact that the clerks were considered by statute to be the "personal staff of judicial officers" did not, in the Third Circuit's view, "preclude the possibility that a county may share co-employer or joint employer status with the courts." *Id.* at 727. The facts of the case convinced the Third Circuit that Dauphin County was sufficiently involved in the clerks' employment so as to be potentially liable for the sexual harassment they suffered at the court. The Third Circuit

was particularly persuaded by the fact that the clerks filed a complaint with Dauphin County, showing that they "expected the County to have the authority to intervene in the situation." *Id.* at 728–29 (applying *Armbruster*, 711 F.2d at 1337).

The Court finds *Graves*'s reasoning persuasive, and its facts are similar to the case at hand. The Municipal Court was established by statute, Ohio Rev. Code Ann. § 1901.01(A). The hiring and compensation of "court employees" is also governed by statute, which holds in relevant part that "[t]he judge or judges of a municipal court may appoint one or more interpreters," and that interpreters' salaries are paid "out of the city treasury" in amounts determined by the legislature. Ohio Rev. Code Ann. § 1901.33(A). *Accord State ex rel. O'Farrell v. New Philadelphia City Council*, 57 Ohio St. 3d 73, 75 (Ohio 1991) ("R.C. 1901.33 authorizes the legislative authority to prescribe the compensation of certain . . . municipal court employees."). As in *Graves*, however, the Plaintiff alleges a relationship between the City and the Municipal Court that extends beyond the financial one established at law.

The Plaintiff contends that the City and the Municipal Court jointly handled labor relations, compensation, and investigation and remediation of discrimination and retaliation at the Municipal Court. For example, Municipal Court employees were directed to the City's Employee Assistance Program for any counseling they may have needed. The Plaintiff also claims that the City Attorney, charged under the City Charter with providing legal counsel to the City and "all officers and departments thereof," was the Municipal Court's primary resource in working through the issues raised by Judge Hale's misconduct, suggesting that the City perceived itself to be potentially liable for the sexual harassment occurring at the Municipal Court. In particular, the Plaintiff alleges that the City Attorney directed the Municipal Court to quash the Columbus Dispatch story on Judge Hale's pervasive sexual harassment, cooperated

with the Municipal Court administration to keep Judge Hale on the bench, and played a role in reassigning the Plaintiff to the magistrate judge's courtrooms in retaliation for her complaint against Judge Hale. These allegations demonstrate, as in *Graves*, that a jury could find that the City exercised sufficient control over the Plaintiff's employment that the City is the Plaintiff's joint employer. *See Graves*, 117 F.3d at 729.

The City cites to a number of § 1983 cases for the proposition that it cannot be held liable for the actions of Municipal Court employees. *E.g. Mumford v. Basinski*, 105 F.3d 264, 268 (6th Cir. 1997); *Mancini v. City of Garfield Heights*, No. 94-3188, 1994 U.S. App. LEXIS 28142, at *4 (6th Cir. 1994); *Sampson v. City of Xenia*, 108 F. Supp. 2d 821, 839 (S.D. Ohio 1999). These cases are not on point. The question in a § 1983 action is whether a municipal employee's unconstitutional act was the result of the municipality's official policies or customs. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). That question is distinct from whether the City had an employment relationship with the Plaintiff for the purpose of Title VII. *Cf. Mace v. City of Akron*, 989 F. Supp. 949, (N.D. Ohio 1998) (explaining that whether the alleged tortfeasor is the employee of the municipality is irrelevant under *Monell*).

The City also relies on *Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir. 1988) (per curiam), in which the Sixth Circuit wrote that "employees of the Akron Municipal Court are not city employees." That comment, however, occurred in a context distinct from the one here, and relied on a case that concerned the jurisdiction of the Civil Service Commission, s*ee Dugan v. Civil Service Com.*, 9 Ohio App. 3d 218, 219 (Ohio Ct. App., Summit County 1983), not whether a city is or can be a Title VII employer of a municipal court employee.

Because the Plaintiff has alleged facts supporting her claim that the City is potentially liable as her joint employer, and because the City has not cited any legal authority to the

contrary, the Court **DENIES** the Defendant's motion to dismiss the Plaintiff's Title VII claim against the City.

## *2. § 1983*

The Parties focus their briefs on the Plaintiff's Title VII claim. The Defendants, however, request that the Court dismiss the Plaintiff's entire complaint, which, as has already been noted, includes a claim under § 1983. The Court will, therefore, briefly address the sufficiency of the Plaintiffs' § 1983 claim against the City.

Section 1983 "by its terms does not create any substantive rights but rather 'merely provides remedies for deprivations of rights established elsewhere.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)). To prevail on her § 1983 claims, the Plaintiff "'must establish that a person acting under color of state law deprived [her] of a right secured by the Constitution or laws of the United States.'" *Id*. (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001)).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality may be held liable under § 1983 for the unconstitutional acts of its employees if either a municipality's official policy or one of its customs is the source of the injury. *Id*. at 694. In order to demonstrate liability, a plaintiff must show that the official policy in question is the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citing *Monell*, 436 U.S. at 694). Therefore, unless an official policy-maker is involved in the underlying constitutional violation, the existence of an official policy or custom cannot be demonstrated by the occurrence of the alleged constitutional violation itself. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

The Sixth Circuit has held that in order "to satisfy the *Monell* requirements, a plaintiff must identify the policy [or custom], connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir.1993); *see also Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997) (noting that a plaintiff must show that municipal action was taken with requisite degree of culpability and must demonstrate a direct causal link between the municipal action and a deprivation of federal rights). A municipal policy includes a "policy statement, ordinance, regulation, or decision adopted and promulgated*.*" *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690). "An actionable 'custom,' in contrast, 'has not received formal approval through . . . official decisionmaking channels.' A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue." *Id*. (quoting *Monell*, 436 U.S. at 690–91).

As noted above, the Defendants have cited to a number of § 1983 cases affirming the separateness of municipalities and courts in Ohio for the purposes of *Monell* liability. Some, like *Mumford*, 105 F.3d at 268, analyzed the relationship between Ohio courts and counties solely for the purpose of Eleventh Amendment immunity, which is not at issue here. Others ruled that municipalities could not be liable under § 1983 for the policies of the courts, but relied only on the statutory relationship between the two entities. *See Mancini*, 1994 U.S. App. LEXIS 28142, at *4; *Sampson*, 108 F. Supp. 2d 821 at 839. None involved allegations as exist here that the City was directly involved in the constitutional violations. The Court therefore **DENIES** the Defendant's motion to dismiss the Plaintiff's § 1983 claim against the City.

*3. COBRA*

11

The Plaintiff has alleged that she was an employee covered by the COBRA, that the City was her co-employer, that the City was required to notify her of her rights under COBA upon her termination, and that its failure to do so was a violation of her rights. The City retorts that it is not her employer and cannot be liable for any alleged COBRA violations.

"Employer" is defined broadly for the purpose of COBRA: "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5); *McDowell v. Krawchison*, 125 F.3d 954, 961 (6th Cir. 1997) ("'Employer' is defined in ERISA, and the definition applies to the entire subchapter, which includes COBRA."). The Court cannot determine from the Plaintiff's complaint whether the City meets this definition of "employer" because the Plaintiff has not pleaded any facts in relationship to the administration of an employee benefit plan. This claim does not, therefore, satisfy the requirements of Rule 12(b)(6) and *Twombly*, 550 U.S. at 555, and the Court accordingly **GRANTS** the Defendant's motion to dismiss the COBRA claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendant's motion to dismiss all claims against the Municipal Court, **GRANTS** the Defendant's motion to dismiss the Plaintiff's COBRA claim, and **DENIES** the Defendants' motion to dismiss all claims against the City (Doc. 10).

**IT IS SO ORDERED.**

                                                s/Algenon L. Marbley
                                                **ALGENON L. MARBLEY**
                                                **United States District Court Judge**

**DATE**: August 22, 2011