IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA WILLIAMS, | : | |
| | : | Case No. 2:10-CV-1155 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Elizabeth Preston |
| CITY OF COLUMBUS, OHIO, et al., | : | Deavers |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This civil rights action is now before the Court on Defendant State of Ohio's ("the State") Motion to Dismiss, (Doc. 62), and Defendant City of Columbus's ("the City") Motion for Summary Judgment, (Doc. 61). For the reasons that follow, the State's Motion to Dismiss is **GRANTED**, and the City's Motion for Summary Judgment is **DENIED**.

**II. BACKGROUND**

*A. Factual Background*[1]

Plaintiff Brenda Williams ("Plaintiff" or "Williams") is a woman of Latin heritage who worked as a Spanish interpreter in the Franklin County Municipal Court ("the Municipal Court") beginning in 2001. During 2006, Judge Harland Hale began making inappropriate racial and sexual comments towards Williams. Williams alleges, for example, that Judge Hale referred to her as a "wetback" in public, asked her for dates, demanded that she accompany him on trips, and stared at her in a sexually suggestive way.

---

[1] These facts are taken in large part from this Court's August 22, 2011 Opinion and Order granting in part and denying in part Defendants Franklin County Municipal Court and the City's Motion to Dismiss. (Doc. 16.)

According to Williams, Judge Hale verbally harassed other women and minorities in the Municipal Court, including employees, attorneys, witnesses, and parties.  At least some of these women made formal complaints to the Human Resources department at the Municipal Court.  Williams learned through conversations with members of the City Attorney's office that Judge Hale's misconduct was widely acknowledged and was so egregious that the prosecutor's office avoided assigning female prosecutors to Judge Hale's courtroom for long periods of time before, in 2009, the office stopped assigning female prosecutors to his courtroom at all.

In the summer of 2006, Williams was working on a computer in Judge Hale's office when he grabbed her breasts.  Williams did not make a formal complaint at that time out of fear.  She learned, shortly thereafter, that Judge Hale had been informing other members of the Municipal Court that she was mentally unbalanced.

Around the same time, Williams noticed that other members of the Municipal Court staff and attorneys known to be close to Judge Hale were treating her differently.  Williams states that this hostile work environment forced her to seek treatment from a physician and clinical psychologist and ultimately, resulted in her becoming disabled with post-traumatic stress disorder ("PTSD").

Williams left work for some period of time due to her PTSD but eventually resumed work for financial reasons.  Williams received a letter upon her return stating that the Municipal Court had initiated an investigation into her allegations and would separate her from Judge Hale for the duration of the investigation.  Williams alleges, however, that no such investigation ever took place.  Williams was not only prohibited from working in Judge Hale's courtroom, but was also prohibited from working in the courtrooms of all of the judges but for the magistrates.

Williams contends that the hostile environment she experienced increased over time and persisted for a number of years.

In 2010, Williams had her attorney deliver a letter to the City reaffirming her harassment allegations. Following the letter, Williams was assigned to work in Judge Hale's courtroom again. When Williams tried to work with other interpreters to avoid or minimize contact with Judge Hale, other court staff harassed her for the extra work that the arrangement was causing.

By the summer of 2010, Williams's health care providers advised her that she had to stop working. Williams complied and attempted to apply for short-term disability. According to Williams, the City, the Municipal Court, and their agents deliberately obstructed her efforts to obtain short-term disability payments.

Williams alleges that in 2006, Tamara Meister, the Human Resources Manager at the Municipal Court, independently contacted her about her experiences with Judge Hale. Meister investigated Williams's allegations and concluded they were meritorious. Meister reported her findings to Court Administrator, Keith Bartlett. Meister and Bartlett then met with Judges Green, Glaeden, and Brandt. Williams contends that the result of this meeting was not an investigation into the allegations or reprimand of Judge Hale. Instead, the judges, in consultation with the City Attorney, instituted a policy whereby any woman who reported an instance of sexual harassment involving Judge Hale would be transferred from his courtroom or chambers. In addition, Judge Green would share chambers with Judge Hale to keep Judge Hale's behavior in check.

Williams also alleges that the Municipal Court and the City attempted to cover-up Judge Hale's repeated sexual and racial harassment. For example, in December 2006, a reporter from the Columbus Dispatch sought personnel files from the Municipal Court of three women at the

3

Municipal Court who had complained about Judge Hale.  Williams alleges that the Municipal Court, in collusion with the City Attorney, concealed documents from the reporter.  The City participated in the cover-up by hiding information about Judge Hale's conduct from the public and the Ohio Supreme Court Office of Disciplinary Counsel, and by cooperating with the Municipal Court to keep Judge Hale on the bench.

Williams filed a charge against the Municipal Court and the City before the Equal Employment Opportunity Commission ("EEOC") in June 2010.  Williams contends that the Municipal Court and the City made false representations to the EEOC as part of the continuing cover-up scheme.

Williams was fired on November 22, 2010.  The stated reason for the termination was that Williams's physician had not supplied the requisite paperwork to document her continuing disability.  Williams claims that this reason is pretextual.

*B. Procedural Background*

Williams filed her initial Complaint on December 21, 2010, and a First Amended Complaint on March 7, 2011.[2]  (Doc. 2, 7.)  Plaintiff's First Amended Complaint contained four claims against the Municipal Court and the City: (1) hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; (2) retaliatory discharge in violation of Title VII; (3) violation of the Plaintiff's rights under the First, Fifth, and Fourteenth Amendments under 42 U.S.C. § 1983; and (4) violations of the Consolidated Budget Reconciliation Act of 1986 ("COBRA"), § 10002, Pub. L. No. 99-272, 100 Stat. 227-32 (codified as amended at 29 U.S.C. §§ 1161–68).  Plaintiff sought damages as well an order instituting reforms designed to eradicate gender-based harassment from the Municipal Court.

---

[2] Defendants Richard Pfeiffer and Pamela Gordon were dropped from Plaintiff's First Amended Complaint.

The Municipal Court and the City filed a Motion to Dismiss on March 21, 2011. (Doc. 10.) That Motion to Dismiss was granted in part and denied in part in this Court's August 22, 2011 Opinion and Order. (Doc. 16.) All claims against the Municipal Court were dismissed and the Municipal Court was terminated as a Defendant because under Ohio law, Ohio courts are not *sui juris*. *See Malone v. Ct. of Common Pleas of Cuyahoga Cnty.*, 344 N.E.2d 126, 128 (Ohio 1976). This Court also granted Defendants' Motion to Dismiss with respect to Williams' COBRA claims against the City.[3] The Motion to Dismiss was denied, however, with respect to the Title VII and §1983 claims against the City.

Williams then moved to substitute the State of Ohio for the Municipal Court, (Doc. 18), and this Court granted that request and ordered Williams to file another amended complaint making this substitution clear, (Doc. 23). Plaintiff filed her Second Amended Complaint on November 29, 2011, which contains allegations that are substantively similar to those contained in the First Amended Complaint. (*Compare* Doc. 7 *with* Doc. 30.)

The City filed a Motion for Summary Judgment, (Doc. 61), this Court held a hearing on that Motion, and it is now ripe for review. The State filed its Motion to Dismiss and that Motion is also now ripe for review. (Doc. 62.)

### III. MOTION TO DISMISS

*A. Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to

---

[3] Williams's alleges a claim for violations of COBRA against both Defendants in her Second Amended Complaint. This Court already dismissed Williams's COBRA claim in its August 22, 2011 Opinion and Order, reasoning that it could not "determine from the Plaintiff's [First Amended Complaint] whether the City meets this definition of 'employer' because the Plaintiff has not pleaded any facts in relationship [*sic*] to the administration of an employee benefit plan." (Doc. 16.) The Second Amended Complaint adds no new allegations that would remedy this deficiency. This Court, therefore, need not address this claim again.

5

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has satisfied Rule 12(b)(6) if he or she pled enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Additionally, the Court must accept as true allegations of fact contained in the complaint, and the complaint must be construed in the light most favorable to the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975).

*B. Law and Analysis*

1. Section 1983 and COBRA Violations

As a threshold matter, the State moves to dismiss Williams's claims for violations of § 1983 and COBRA, and Williams does not oppose dismissal of those claims. Williams's claims for violations of her rights under the First, Fifth, and Fourteenth Amendments under § 1983 and for COBRA violations are hereby **DISMISSED**.

2. Title VII Claims

The State asserts that Plaintiff's Title VII claims should be dismissed because Williams failed to exhaust her administrative remedies when she did not name the State as her employer

on the EEOC charge form. The State also contends that Williams did not bring her Title VII claims against the State within the appropriate statute of limitations.

Williams named "The City of Columbus, Ohio/Franklin County Municipal Court" in her EEOC charge as the entity she believed discriminated against her.[4] (Doc. 62-1.) A party can sue an entity for violating civil rights statutes, such as Title VII, only if it named the entity in its prior EEOC change. *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1480–81 (6th Cir. 1990). There is an exception to the general rule, however, where an unnamed party in the EEOC charge has a "clear identity of interest" with the party actually sued. *Id.* at 1481 (citations and quotations omitted). This Circuit applies two tests to determine when an identity of interest exists. *See Romain v. Kurek*, 836 F.2d 241, 245–46 (6th Cir. 1987) (applying the *Eggleston* test and the *Glus* test); *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 411–12 (6th Cir. 1999) (same).

Under the first test, originally from the Seventh Circuit, an identity of interest exists when the unnamed party has sufficient notice of the claim to participate in voluntary conciliation proceedings. *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981).[5] This Circuit has required that the unnamed party have actual notice of the claim. *Szoke v. United Parcel Serv. of Am.*, 398 F. App'x 145, 154 (6th Cir. 2010); *see Alexander*, 177 F.3d at 412 (finding that the *Eggleston* test was satisfied where a local union

---

[4] This Court can properly consider Williams's EEOC charge because it is a document that is properly considered part of the pleadings. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (explaining that documents are to be considered as part of a pleading if they are referred to in a plaintiff's complaint and are central to the plaintiff's claim); *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (noting that where extrinsic materials merely "add nothing new, but, in effect, reiterate the contents of the complaint itself," they may be considered without converting a motion to dismiss to a motion for summary judgment).

[5] The State incorrectly cites *Eggleston* as a Sixth Circuit opinion, rather than a Seventh Circuit opinion.

official against whom plaintiff filed discrimination charges informed the national union, the unnamed party, about the charge and forwarded copies of the charge).

Williams does not allege that the State received actual notice of her claim. Rather, Williams argues that the Municipal Court is an agent of the State, and notice to an agent is notice to the principal. Williams also argues that "the 'named party' in the charge was functionally the State itself, in that the [Municipal Court] has no separate legal identity from the State." (Doc. 69 at 5.) In making this argument, Williams relies on *Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988) and *Sampson v. City of Xenia*, 108 F. Supp. 2d 821 (S.D. Ohio 1991).

In *Foster*, the court noted that an Akron Municipal Court was "part of the Ohio court system" and "subject to the supervision of the Ohio Supreme Court." 864 F.2d at 418. In *Sampson*, the court mentioned that "state municipal and common pleas courts are components of the state government and not part of the county or municipal government where they sit." 108 F. Supp. 2d at 839. But these cases hardly stand for the proposition that notice to the Municipal Court is equivalent to notice to the State, nor do they indicate that the Municipal Court has "no separate legal identity" from the State. These cases simply explain that the Municipal Court is part of the Ohio court system. Williams has set forth no allegations or persuasive cases that demonstrate because the Municipal Court receives notice of an EEOC charge, the State does as well. "A 'clear identity of interest' implies that the named and unnamed parties are virtual alter egos." *Knafel*, 899 F.2d at 1481 (finding a parent and subsidiary were clearly two distinct entities with different business operations that were not alter egos, and therefore, there was no identity of interest). Williams has failed to demonstrate identity of interest under the *Eggleston* test. *See Szoke*, 398 F. App'x at 157 (finding that where UPS Ohio was the named party in an EEOC charge and UPS America was unnamed, the plaintiff had not alleged facts meeting the

*Eggleston* test because "UPS America did not have an opportunity to settle the claim voluntarily").

The second test originates from the Third Circuit's decision in *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d. Cir. 1977). The *Glus* test examines four factors that look into "the relationship between the named and unnamed parties at the time the charge is filed and conciliation efforts occur":

(1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

(2) Whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

(3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and

(4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Romain*, 836 F.2d at 245–46 (citing *Glus*, 562 F.2d at 888).

The first factor of the test weighs in the State's favor. As this Circuit explained in *Romain*, "[t]he 'identity of interest' exception acknowledges the reality that *laymen, unassisted by trained lawyers*, initiate the process of filing a charge with the EEOC, and accordingly prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." *Id.* at 245 (emphasis added). But, as the State points out, Williams was represented by her attorney at the time the EEOC charge was filed. (*See* Doc. 62-1) (Williams's EEOC charge, which was notarized by her attorney, Michael Moore). Moreover, with little, if any, investigation, Williams's counsel could have determined that the Municipal Court was part

9

of the Ohio state court system. *See, e.g.*, *Mumford v. Basinski*, 105 F.3d 264, 268 (6th Cir. 1997); Ohio Rev. Code § 1901.01. This first factor weighs in the State's favor.

With respect to factor two of the *Glus* test, this Court already rejected Williams's arguments related to the Municipal Court and the state being virtual alter egos of one another in the context of the *Eggleston* test above. It is clear, therefore, that the Municipal Court and the State are not so similar "that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceeding." *See Romain*, 836 F.2d at 245–46. As a result, factor two weighs in favor of finding there was no identity of interest between the State and Municipal Court.

Williams next argues that the State cannot show actual prejudice because there was never any conciliation proceeding commenced, and even if the State had been absent from such a proceeding, there would have been no prejudice because Williams's charge was dismissed without finding probable cause. The State makes no arguments related to this third factor in rebuttal, and therefore, it weighs in William's favor.

Finally, as for the fourth factor, the State did nothing to contest the fact that the Municipal Court was part of its court system. *Szoke*, 398 F. App'x at 155 (explaining the fourth factor weighed against finding identity of interest where UPS America, the unnamed party, "did not hide its role in administering the Retirement and Pension Plans or suggest that UPS Ohio was actually the party administering the plans"). As stated above, it would have taken Williams's counsel very little time—if any time at all—to discern this relationship. In this case, the fact that someone told Williams that she was an employee of the Municipal Court is less persuasive, given she was already represented by counsel at the time she filed her charge. The fourth factor of the *Glus* test weighs in favor of finding no identity of interest.

Because Williams has not met the *Eggleston* test, and because three of the four factors in the *Glus* test weigh in favor of finding no identity of interest, this Court finds the State's argument that Plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies persuasive. It is, therefore, unnecessary to address the State's contention that Williams failed to bring her claims within the statute of limitations.

Because all claims against the State are now **DISMISSED**, the State is terminated as a Defendant in this lawsuit.

### IV. MOTION FOR SUMMARY JUDMGENT

*A. Standard of Review*

Summary judgment is proper if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant, therefore, has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The central inquiry is "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. If the moving party meets its burden, then the non-moving party is under an affirmative duty to point out specific facts in the record, which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-moving party may not

rest merely on allegations or denials in its own pleadings, *see Celotex*, 477 U.S. at 324, but must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts," *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

"[A]t the summary judgment stage the judge's function is not himself to weigh evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the court may rely on the evidence called to its attention by the parties. *Id.*

*B. Law and Analysis*

1. Title VII Claims

Williams can bring a Title VII claim against the City only if she can establish that the City was her employer. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 611 (6th Cir. 2003). The City's sole argument in its Motion for Summary Judgment is that the evidence on the record indicates it has never been Plaintiff's employer. Plaintiff retorts that there is ample evidence demonstrating that she was employed by the City, or, at the very least, there is enough evidence that summary judgment on that basis is improper.

In its August 22, 2011 Opinion and Order, this Court held Plaintiff's allegations were sufficient to withstand the City's Motion to Dismiss because "a jury could find that the City exercised sufficient control over the Plaintiff's employment that the City is the Plaintiff's joint employer." (Doc. 16) (citing *Graves v. Lowery*, 117 F.3d 723, 723 (3d. Cir. 1997)). Now the relevant inquiry shifts to whether, on the record, there is a genuine issue of material fact that the

12

City acted as William's joint employer. If a reasonable juror could conclude that the City did, in fact, employ Williams, summary judgment is not warranted. *See Anderson*, 477 U.S. at 248.

The parties do not dispute that the Municipal Court, not the City, was Williams's direct employer. "[C]ourts have fashioned various doctrines," however, "by which a defendant that does not directly employ a plaintiff may still be considered an 'employer'" under Title VII. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).[6] The first approach analyzes whether two entities are so interrelated that they may be considered a "single employer" or an "integrated enterprise." *See, e.g.*, *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982) (analyzing whether an association and its member companies could be considered an integrated enterprise). The second approach examines whether "one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." *Swallows*, 128 F.3d at 993 (citations omitted). The final approach examines whether the entity that allegedly engaged in illegal employment action was acting as an agent of another company, making the principal company potentially liable with the agent company. *Id.* (citations omitted). The City does not argue that the third approach is applicable here.

---

[6] In *Swallows*, this Circuit analyzed whether a university could be held liable as a *de facto* employer under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). 128 F.3d at 992–93. The Circuit explained that "[b]ecause Title VII, the ADEA, and the ADA define 'employer' essentially the same way, we rely on case law developed under all three statues." *Id.* at 992 n. 2 (citing *Wathen v. General Elec. Co.*, 115 F.3d 400, 404 n. 6 (6th Cir. 1997)). Title VII and the National Labor Relations Act (NLRA) also define "employer" similarly. *Compare* 42 U.S.C. §§ 2000e(a), (b) *with* 29 U.S.C. §§ 152(1), (2). This Circuit has held that because "it is clear that the framers of Title VII used the NLRA as it model, . . . we find the similarity in language of the Acts indicative of a willingness to allow a broad construction of the NLRA to provide guidance in the determination of whether, under Title VII, two companies should be deemed to have substantial identity and treated as a single employer." *Armbruster v. Quinn*, 711 F.2d 1332, 1336 (6th Cir. 1983), *rev'd on other grounds*, 546 U.S. 500 (2006) (citations omitted).

a. Single or Integrated Employer

This Court previously explained that "the City is potentially liable as [Williams's] *joint* employer." (Doc.16) (emphasis added). The City, nevertheless, devotes a portion of its brief to discussing the factors applied by this Circuit when determining whether two entities should be considered a single or integrated employer. At the hearing, the City clarified that it was, in fact, arguing that the single employer analysis applied.

In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations (i.e., common offices, common record keeping, shared bank accounts and equipment); (2) common management, directors, and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Swallows*, 128 F.3d at 993–94 (citing *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d at 362). The City recites these factors, and then argues that the factors ultimately deal with whether the employer has the right to control the employee. In this case, the City argues, it has no such right as "there are no common offices, no common record keeping, or shared bank accounts or equipment." (Doc. 61.)

This Court does not find that the relevant analysis is whether the City and the Municipal Court are so interrelated that they may be considered a single or integrated employer, but whether the City and Municipal Court act as joint employers. The City and the Municipal Court clearly are not so connected that "all of the employees of one are attributed to the other." *See Stanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011). This Court already clarified that the relevant analysis in this case is the joint employer doctrine in its

14

August 22, 2011 Opinion and Order.  The argument put forth by the City will be analyzed in the context of that doctrine.[7]

### b. Joint Employer

Under the joint employer doctrine, the inquiry focuses on whether an entity "maintains sufficient control over some or all of the formal employees of another [entity] as to qualify as those employees' employer; unlike in the single-employer context, the two [entities] are in fact independent." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x at 491; *Swallows*, 128 F.3d at 993 n.4 (same).  This Circuit has held that "[o]ne entity is the joint employer of another entity's formal employees, and thus liable under federal and state anti-discrimination laws, if the two 'share or co-determine those matters governing essential terms and conditions of employment.'" *Sanford*, 449 F. App'x at 492 (citing *Carrier Corp. v. Nat. Labor Relations Bd.*, 768 F.2d 778, 781 (6th Cir. 1985)).  Factors to consider when making this determination include: the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance.  *Id.* (citing *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 595 (6th Cir. 2009)).  Courts have also examined the alleged joint employer's: supervision of the employees' day-to-day activities, promulgation of work rules, conditions of employment, and

---

[7] The *Swallows* court used a similar approach when the State used the term "joint employer" in its brief, despite arguing, in actuality, that the State acted as a single or integrated employer.  128 F.3d at 993 n.4.  The court admitted that "the opinions of this circuit have not been entirely clear on the distinction between the concepts of 'joint' and 'single' employers," but, "[a]s other courts have explained, however, these concepts are analytically distinct. . . . While the single employer analysis involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise," the joint employer analysis focuses on whether "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."  *Id.* (internal citations omitted).  The court then analyzed the state's arguments in the context of the single employer doctrine.  *Id.* at 993–96.

work assignments, and issuance of operating instructions. *See Woods v. Washtenaw Hills Manor*, No. 07-CV-15420, 2009 WL 2222629, at *17 (E.D. Mich. July 23, 2009).[8]

The City argues that the evidence—which for the most part consists of affidavit evidence from various members of the Municipal Court—demonstrates that it has no role in "any personal matters of the Court." (Doc. 61.) The City points out that it has no right to hire or fire Municipal Court employees. Although the Municipal Court employees receive a pay check from the City, the paycheck is provided only under the terms of an agreement. The Municipal Court sets its own budget, terms of compensation, and terms of benefits. The City does not have control over the rate at which the Municipal Court employees are compensated, and the City is not the sole source of funding for the Municipal Court. The Municipal Court has its own sexual harassment policy and procedure for dealing with claims made pursuant to that policy. Employees of the Municipal Court are at-will and can be terminated by the judges at any time. Williams herself was terminated by a vote of the judges.

The City also argues that to be a City employee, one must be hired and continue to be employed in accordance with the Columbus City Charter and Columbus Civil Service Rules. A City employee must be either a member of a bargaining unit or covered by the City's Management Compensation Plan. The City contends that because Municipal Court employees are not members of such bargaining units or covered under such Plans, they cannot be considered

---

[8] Both parties discuss the Sixth Circuit's joint employer analysis in *Grace v. USCAR*, 521 F.3d 655 (6th Cir. 2008). The issue in that case was whether a staffing agency and design firm were joint employers under the Family Medical Leave Act ("FMLA"). *Id.* at 665–96. It is not clear, however, that the analysis in *Grace* is applicable here, because the Department of Labor has promulgated regulations interpreting the FMLA and fashioning tests to determine whether entities are integrated or joint employers under the FMLA. 29 C.F.R. §§ 825.104(c), 825.106. The same regulations do not exist in the context of Title VII.

employees of the City. Finally, the Columbus City Attorney represents the Municipal Court only because it must do so pursuant to an opinion issued by the Ohio Attorney General.

Williams rebuts that the City is her joint employer because it handled her payroll issues, COBRA benefits, health insurance benefits, sick leave, and disability benefits. Williams also points out that the Municipal Court turns to the City Attorney for legal advice. Pam Gordon, the Assistant City Attorney, played a role in receiving complaints from Plaintiff and others about Judge Hale, which indicates that the City perceived itself as being potentially liable for the alleged sexual harassment occurring at the Municipal Court. A letter sent to the Plaintiff relating to the alleged incidents with Judge Hale copied the City Attorney's office.

Moreover, Williams was told by the former Municipal Court administrator that she worked for the City instead of Franklin County. She also received a badge bearing the seal of the City. On one occasion, Williams (and others) received a letter from Mayor Michael Coleman threatening termination if she was caught smoking in the courthouse. Williams was identified as an employee of the City on the form filled out by the City for her Ohio Public Employees Retirement System ("OPERS") pension. She argues that because the City represented to OPERS that she was a City employee, the City should now be estopped from denying that it is her employer. In making this argument, Plaintiff relies on *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 97–98 (S.D.N.Y. 1996), in which the court held that reports the defendant company previously made to government agencies, in which it claimed to have more than 15 employees, estopped the company from asserting that it lacked the requisite 15 employees for coverage under Title VII.

Mindful that summary judgment cannot be granted unless there is no genuine dispute as to any material fact, *see* Federal Rule of Civil Procedure 56(a), this Court cannot say that, on the

17

record before it, the City was not Williams's joint employer. Although the City states that it cannot hire, fire, or discipline Municipal Court employees,[9] and that it has no control over their compensation, Williams has presented evidence that her paycheck came from the City, it handled her benefits (health, insurance, disability, etc.), and it provided her with a badge bearing the seal of the City. Williams also presented evidence that the City made a representation to OPERS that she was a City employee. A reasonable juror could find from this evidence that the City is Williams's employer. Furthermore, the fact that there is conflicting evidence demonstrates that there is a genuine issue of material fact.

      Williams's evidence that the Assistant City Attorney was directly involved when Municipal Court employees discussed Plaintiff's allegations made against Judge Hale also seems to create a genuine issue of material fact. The Assistant City Attorney provided advice to the Municipal Court when it authored letters to Williams about her employment situation. The City Attorney was copied on one such letter sent to Williams regarding Judge Hale and her interactions with him, informing her that there would be an investigation into her claims. While the City may not have been involved in overseeing Williams's daily activities directly, the City Attorney and Assistant City Attorney were involved by providing the Municipal Court with legal advice regarding Williams.

---

[9] There was debate at the summary judgment hearing about whether the letter from Mayor Coleman threatening termination if Williams and other Municipal Court employees were caught smoking was hearsay. Williams argued that the letter was not hearsay because it was a statement against interest. Fed. R. Evid. 801(d)(2) ("A statement is not hearsay if— . . . [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity"). This is a close question, and one the Court does not need to decide at this time because there is enough other evidence on the record that indicates there is a genuine issue of material fact.

Because there is a genuine issue of material fact as to whether the City acted as Williams's joint employer with the Municipal Court, the City's Motion for Summary Judgment is **DENIED**.

### 2. Section 1983 Claims

The City's argument as to why Williams's § 1983 claims fail is contingent on its Title VII employer argument.  The City argues that if this Court makes a determination that the City is not Williams's employer, then the City cannot have a policy, practice, or custom that would affect Williams, which is a requisite to maintaining a § 1983 claims.  Because this Court cannot find, at this stage in the litigation, that the City was not a joint employer, the City's Motion for Summary Judgment as to Plaintiff's § 1983 claims is also **DENIED**.

### V. CONCLUSION

For the foregoing reasons, the State's Motion to Dismiss is **GRANTED**, and the City's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

<u>**s/Algenon L. Marbley**</u>
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: September 12, 2012**